## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

UNITED HEALTHCARE SER-
VICES, INC., UNITEDH-
EALTHCARE INSURANCE COM-
PANY, INC., and
UNITEDHEALTHCARE OF GEOR-
GIA, INC.

     Plaintiffs,

v.

DL INVESTMENT HOLDINGS,
LLC f/k/a DURALL CAPITAL
HOLDINGS, LLC,

     Defendant,

Case No. _____

## VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs United Healthcare Insurance Company, UnitedHealthcare Services, Inc., and UnitedHealthcare of Georgia, Inc. (collectively, "UHC" or "United") bring this action against Defendant DL Investment Holdings, LLC f/k/a Durall Capital Holdings, LLC seeking damages for breach of contract and a preliminary and permanent injunction.

This is a straightforward contract dispute, but one which is causing UHC irreparable injury. UHC requests that the Court enforce a "Stand Down Agreement" ("SDA") UHC executed with DL Investment Holdings on December 14, 2018, to end an arbitration ("Withdrawn Arbitration") over fraudulent claims DL Investment Holdings submitted for reimbursement for laboratory services.

1

DL Investment Holdings has breached its clear contractual obligations under the SDA by recently filing an arbitration and continuing to pursue it over UHC's objections. If Defendant DL Investment Holdings' continuing breach is not enjoined, UHC will suffer irreparable harm.

## INTRODUCTION

1.    In late 2018, DL Investment Holdings sued UHC in the Withdrawn Arbitration for nonpayment of lab claims that UHC had determined were fraudulently submitted. Those same fraudulent claims are still at issue in a massive criminal healthcare fraud case pending in the Middle District of Florida against Aaron Durall, DL Investment Holdings' sole member. *See* 3:20-cr-00086-TJC-JBT (M.D. Fla.) ("Criminal Case").[1] The Criminal Case involves a pass-through billing scheme DL Investment Holdings executed through Chestatee Memorial Hospital ("Chestatee"),[2] a small Georgia facility, that defrauded UHC and other private and government health insurance payors out of hundreds of millions of dollars.

---

[1]    *See also* "Ten Defendants Charged in $1.4 Billion Rural Hospital Pass-Through Billing Scheme," U.S. DEPT. OF JUSTICE (June 29, 2020)  (available here). Several co-conspirators have already pleaded guilty to their roles in what has been widely characterized as one of the largest health care fraud schemes ever. Two additional co-conspirators were convicted at a first trial. A second trial against Mr. Durall and others will begin February 21, 2023.

[2]    *See* "Some Rural Hospitals Used for Big Insurance Reimbursements – and Profit," CBS NEWS (March 26, 2018) (available here).

2.     But shortly after DL Investment Holdings filed the Withdrawn Arbitration, criminal and other litigation and investigation began closing in around Mr. Durall. UHC also intended to file counterclaims for tens of millions of dollars. At an early mediation, UHC realized that, under the circumstances, neither Mr. Durall nor DL Investment Holdings would likely ever be able to repay the ill-gotten proceeds of their fraud or satisfy any judgment UHC obtained. Therefore, to avoid protracted arbitration over the fraudulent lab claims, the parties—through their respective counsel—negotiated the SDA to end the Withdrawn Arbitration.

3.     The SDA was an indefinite cease-fire agreement, but also an option contract that provided UHC with the exclusive right to re-initiate litigation over lab claims at issue in the Withdrawn Arbitration. On no uncertain terms, DL Investment Holdings agreed in the SDA that it "shall not file any type of litigation against United concerning the submission of laboratory services, unless United initiates litigation (or provides notice of its intent to initiate litigation)." (*See* Exhibit 1, SDA ¶ 2.A.)

4.     The Criminal Case is ongoing. Mr. Durall remains subject to a $184,407,671 preliminary forfeiture order and is set to be re-tried in February

2023. (*See* Criminal Case Doc. 603.)[3] Given the still-pending Criminal Case, and what UHC sees as a high chance of conviction, UHC has had no incentive to exercise its exclusive option under the SDA to re-initiate the Withdrawn Arbitration because there will likely be no proceeds to collect from DL Investment Holdings or Mr. Durall. Additionally, DL Investment Holdings and Mr. Durall sold Chestatee in 2018, and UHC has not desired to file suit against a small, rural hospital to collect overpayments resulting from criminally fraudulent conduct that occurred at the direction of Mr. Durall during his brief ownership of the facility.

5.      But despite UHC having an exclusive option to initiate civil litigation, DL Investment Holdings recently breached the SDA by filing an improper arbitration against UHC, without UHC filing litigation or providing notice of its intention to do so. As part of that improper arbitration, on November 30, 2022, DL Investment Holdings also filed a claim to unilaterally rescind the SDA. Coincidentally or not, DL Investment Holdings filed the prohibited arbitration about one month before Mr. Durall's first criminal trial began.

6.      UHC has been constantly objecting to the arbitration in that forum since it was filed. ***The SDA does not contain an arbitration provision***. DL

---

[3]      While several of his co-conspirators have been convicted or pleaded guilty, the first trial against Mr. Durall, conducted beginning in May 2022, ended in a hung jury.

Investment Holdings therefore has no right to initiate an arbitration (or litigation) against UHC; and it certainly has no right to have an arbitration panel permit it to rescind the SDA so it may pursue that action.

7.      In November 2022, the arbitration panel, rather than dismiss the arbitration based on UHC's jurisdictional objections, ordered the parties to submit early dispositive motions, on or before January 16, 2023, concerning the meaning and enforcement of the SDA. UHC is, accordingly, being forced to arbitrate claims it has not agreed to arbitrate and to have an arbitration panel purport to decide issues to which no arbitration provision has ever applied. Disputes over the SDA must be resolved in court.

8.      UHC therefore requests that the Court enter a temporary restraining order and preliminary injunction preventing DL Investment Holdings from pursuing the improper arbitration until the Court can reach a determination on the merits of UHC's claim asserting the DL Investment Holdings is liable to UHC for damages for its breach of the SDA.

## PARTIES

9.      Plaintiff United Healthcare Services, Inc. is a corporation organized under the laws of the State of Minnesota, with its principal place of business in the State of Minnesota.

10.     Plaintiff UnitedHealthcare Insurance Company, Inc. is a corporation organized under the laws of the State of Connecticut, with its principal place of business in the State of Connecticut.

11.     Plaintiff UnitedHealthcare of Georgia, Inc. is a corporation organized under the laws of the State of Georgia, with its principal place of business in Georgia.

12.     Defendant DL Investment Holdings, LLC f/k/a Durall Capital Holdings, LLC is a limited liability company incorporated under the laws of the State of Florida, with its principal place of business in Florida. Upon information and belief, DL Investment Holdings is owned and operated by a single member, Aaron Durall, who is a resident of the State of Florida.

## JURISDICTION AND VENUE

13.     The Court has specific personal jurisdiction over DL Investment Holdings because it transacted business in Georgia. DL Investment Holdings purchased Chestatee (which is in this judicial district) and then used Chestatee to submit thousands of fraudulent claims for reimbursement to UHC and others. DL Investment Holdings mediated the underlying dispute regarding those claim submissions in Georgia, negotiated the SDA in Georgia, executed the SDA with a Georgia choice of law provision, and improperly filed the present arbitration in Georgia.

14.     This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 because there is complete diversity between UHC and DL Investment Holdings, and the amount in controversy exceeds $75,000. UHC has expended more than $100,000 objecting to the arbitration since it was filed, and it will continue to incur additional costs and attorneys' fees in this action which are payable by DL Investment Holdings per the terms of Paragraph 3.A. of the SDA.

15.     Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and Local Civil Rule 3.1(B)(2) because a substantial part of the events giving rise to these claims occurred in this district.

## FACTUAL BACKGROUND

16.     Effective September 15, 2005, UHC executed a Facility Participation Agreement ("FPA") with Chestatee. Aaron Durall later used DL Investment Holdings to purchase Chestatee in 2016.

17.     Chestatee is a small, 49-bed facility in Lumpkin County, Georgia. To ensure that UHC members had access to healthcare in rural, underserved communities, the FPA provided that certain services performed at Chestatee, on behalf of Chestatee patients (i.e., individuals visiting Chestatee for medically necessary inpatient or outpatient medical services), would be reimbursed at rates significantly higher than those services would have been reimbursed

for the same services performed at many urban hospitals or out-of-network facilities.

18.    As alleged in the Criminal Case, Mr. Durall and his co-conspirators' fraud scheme was designed to take advantage of those relatively high rates. Mr. Durall paid kickbacks to healthcare providers to generate referrals for medically unnecessary lab tests that were performed at Reliance Laboratory Testing, Inc. ("Reliance")—an independent lab in South Florida that Mr. Durall owned and controlled. After those tests had been performed at Reliance, Mr. Durall caused DL Investment Holdings to submit claims for reimbursement to UHC (and other private and federal insurance payors) on behalf of Chestatee, using Chestatee's billing credentials, for tests that had been performed at Reliance.

19.    DL Investment Holdings nevertheless represented to UHC that lab tests were performed at Chestatee and on Chestatee patients when, in fact, tests were performed at Reliance—hundreds of miles away, in another state, and on specimens provided by patients with no connection to Chestatee whatsoever. (*See* Criminal Case Superseding Indictment ¶¶ 4, 37(g), 37(k), Doc. 180.) UHC paid Chestatee tens of millions of dollars before suspecting it was making payments based on fraudulent misrepresentations. Upon learning of the fraud, UHC began denying payment for Reliance-related lab claims.

**DL Investment Holdings Brings Arbitration against UHC**

20.     Despite the deceitful nature of its conduct, on August 8, 2018, DL Investment Holdings filed an arbitration in Georgia against UHC under the FPA. DL Investment Holdings alleged that UHC materially breached the FPA, violated Georgia prompt pay laws, and was unjustly enriched by its failure to reimburse Chestatee for certain lab tests performed from August 2016 to July 2018. In other words, after UHC discovered the fraud and stopped paying fraudulent claims, DL Investment Holdings—quite boldly—filed an arbitration seeking reimbursement for unpaid claims associated with the pass-through billing fraud Mr. Durall executed through Chestatee.

21.     That arbitration was short-lived. On August 24, 2018, pursuant to an "Agreement to Withdraw Arbitration Without Prejudice" executed by the parties, DL Investment Holdings withdrew the arbitration before UHC filed its fraud counterclaims—to avoid litigating those fraud counterclaims and because Mr. Durall was embroiled in other litigation and facing federal criminal indictment. (*See* Exhibit 2 (hereinafter, "Agreement to Withdraw").)

22.     The Agreement to Withdraw was intended to be a temporary pause to the dispute. In that agreement, upon DL Investment Holdings' withdrawal of its claims, UHC agreed to not re-initiate an arbitration, including over its fraud counterclaims, within the following forty-five days (a pause that was

extended several times by further agreement). UHC also agreed to mediate the underlying dispute.

23.     On September 27, 2018, DL Investment and UHC engaged in mediation, pursuant to which DL Investment Holdings offered to pay UHC between $2 million and $6 million to resolve all claims (and to prevent UHC from filing its fraud counterclaims).

24.     But the parties were unable to settle at that mediation. To UHC, DL Investment Holdings was offering to repay only a fraction of the overpayments caused by its fraudulent scheme, and Mr. Durall was seeking to minimize his liability for restitution in connection with the Criminal Case.[4]

**The Parties Negotiate the Stand-Down Agreement ("SDA")**

25.     Having failed to achieve a monetary settlement at the mediation, the parties (through their respective counsel) began negotiating a lasting cease-fire agreement. The result was the more-permanent SDA, which expressly superseded the Agreement to Withdraw. (SDA ¶ 7.A.) The SDA was designed "to set particular parameters and limitations" around future litigation between the parties. (SDA Preamble.) On one hand, UHC would only agree to suspend proceedings if UHC retained the sole right to re-initiate litigation.

---

[4]     UHC does not just litigate on behalf of itself, but also on behalf of its customers and associated plans, which were also harmed by DL Investment Holdings' conduct.

On the other hand, DL Investment Holdings wanted to ensure that, were any litigation to resume at UHC's option, then DL Investment Holdings' claims would remain timely despite the time-limitations for dispute-resolution set forth in the underlying FPA or any applicable statutes of limitations.[5]

26.     Numerous emails traded between counsel during negotiation of the SDA reflect these conditions, meanings, and purposes. (*See, e.g.*, Exhibit 3, 11/26/2018 Email ("The idea is: an agreement that precludes Durall-related parties [including DL Investment Holdings] from filing any suits against United, unless United files claims against them[.]").)[6]

27.     On December 14, 2018, UHC and DL Investment Holdings (and seven other parties, including Mr. Durall) executed the final SDA.[7] The SDA's language is clear. Unless UHC brings claims against a Durall Party (or provides notice of an intent to do so), DL Investment Holdings is expressly prohibited from bringing claims against UHC:

---

[5]     The FPA contains default time-restrictions on the initiation of disputes over alleged overpayment or underpayment.

[6]     The email exchange is between undersigned counsel and James (Jim) Silver, who was counsel for DL Capital Holdings at the time the SDA was negotiated. DL Investment Holdings is represented by different counsel in the improperly filed arbitration underlying this suit.

[7]     The SDA was entered into by UHC and a group defined as the "Durall Parties," which includes Aaron Durall, DL Investment Holdings, Reliance, and other entities and persons associated with Mr. Durall and which are also alleged to have been wound up in the pass-through billing fraud alleged in the Criminal Case.

> The Durall Parties **shall not file any type of litigation against United** concerning the submission of laboratory services, **unless United initiates litigation (or provides notice of its intent to initiate litigation)** against a Durall Party, in which case a Durall Party may assert claims (or counterclaims) against United, as described in Section 2(B)(i)-(v) of this Agreement.

(SDA ¶ 2.A (emphasis added).)

28. If UHC initiated litigation concerning the Chestatee lab claims, then DL Investment Holdings could re-assert its claims against UHC, and those claims would relate back to August 14, 2018 (the day the Withdrawn Arbitration was originally filed):

> **Chestatee**. If United desires to file litigation against any Durall Party that puts at issue laboratory services claims submitted to United under the billing credentials of Chestatee Regional Hospital [ ] then, at least ten days prior to filing such litigation, United must provide notice to the Durall Parties of its intention to file such litigation.
>
> **Upon receipt of such notice from United, any Durall Party may file litigation concerning the Chestatee Lab Claims against United**. If any Durall Party files such litigation against United, then the litigation shall relate-back to August 14, 2018 and put the Parties (and their respective claims, counterclaims, and defenses) in the same posture as they were on that day.

(SDA ¶ 2.B.1 (emphasis supplied).) Without this relation-back, those claims risked becoming untimely under the FPA or statute of limitations.

29.   The SDA further provides that if any Durall Party, including DL Investment Holdings, were to file an action in breach of the SDA, that such an action must be dismissed, and UHC would be automatically entitled to costs and attorneys' fees:

> If the Durall Parties initiate litigation against United in breach of this Agreement, then (i) **this Agreement shall serve as an affirmative defense to such litigation, requiring dismissal of any claims asserted by the Durall Parties against United**, and (ii) the Durall Parties that breached the Agreement shall be liable to United for all resulting costs and fees (including reasonable attorneys' fees) incurred by United as a result of such litigation.

(SDA ¶ 3.A (emphasis supplied).)

30.   DL Investment Holdings bargained for these provisions and benefitted from the resulting language: It was relieved of the prospect of defending UHC's fraud counterclaims; relieved of a settlement posture framed by its offer to pay UHC millions of dollars; and given tolling-protection for its substantive claims should UHC elect to pursue litigation. In exchange, UHC received the sole right to re-initiate any formal proceeding. And again, the SDA was the result of mutual negotiation between the parties' attorneys.

31.   Since signing the SDA, UHC has never initiated arbitration or other litigation against DL Investment Holdings (or any of the Durall Parties) or given notice of its intention to do so.

32.     The Criminal Case (one of the largest criminal healthcare fraud cases in history (*see* Note 1, *supra*) remains pending against Mr. Durall.

**DL Investment Holdings Files Arbitration in Breach of SDA**

33.     After the SDA was signed, UHC did not hear from DL Investment Holdings (or any of the Durall Parties) for the following three years.

34.     On September 28, 2021, in stark contrast to its prior offer to pay up to $6 million to UHC, DL Investment Holdings' attorneys sent UHC an "opening demand" seeking more than $160 million *from UHC* for the unpaid fraudulent lab claims. (Exhibit 4, 9/28/2021 Demand Letter.)

35.     UHC rejected that offer. DL Investment Holdings was by then represented by new counsel who had not been involved in the Withdrawn Arbitration or negotiation of the SDA. As UHC's attorneys explained to new counsel, "at the time we negotiated the [SDA], Durall was going to pay United[.] … When we spoke and I asked for an opening offer, we were expecting to pick up where we left off and receive an 'offer' (not a demand)." (Exhibit 5, 10/5/2022 Email.)

36.     On March 11, 2022, five months later, without any further contact, and two months before Mr. Durall was scheduled to begin his first trial in the Criminal Case, DL Investment Holdings breached the SDA by filing a new arbitration in Georgia against UHC with the American Arbitration Association ("AAA"), brazenly seeking more than $100 million.

14

37.    The new arbitration demand was nearly identical to the demand DL Investment Holdings filed in the Withdrawn Arbitration. The new arbitration was filed without UHC having filed any action against any Durall Party, or noticed its intent to do so, as was its exclusive right under the SDA.

38.    On November 30, 2022, DL Investment Holdings filed an amended demand in the new arbitration which, in addition to presenting the same claims for damages presented in the Withdrawn Arbitration, sought to unilaterally rescind the SDA. According to DL Investment Holdings, it is permitted to unilaterally rescind the SDA because UHC purportedly breached the SDA by failing to reach a global settlement with it.

39.    UHC has not breached the SDA. While the SDA does express the parties' desire that they be given "*time* to reach a global settlement agreement *without fear of such a delay resulting in the loss of causes of action*" (SDA ¶ 1.A (emphasis supplied)), the tolling provisions discussed above accomplish that desire. There is no obligation in the SDA that UHC, or any other party, engage in settlement discussions or reach a global settlement. The SDA merely provides the parties time to reach a global settlement if they chose to do so.

40.    And, at any rate, UHC has not rendered settlement discussions impossible or even impracticable. Other than the $160 million "opening demand" DL Investment Holdings made, which UHC rejected, DL Investment Holdings has not attempted to engage UHC in settlement discussions of any

kind. Upon receipt of DL Investment Holdings' demand, UHC's lawyers indicated their willingness to resume discussions along the lines of the September 27, 2018, mediation, but DL Investment Holdings has declined. (Exhibit 5, 10/5/2021 E-Mail.)

41.    Since receiving DL Investment Holdings' new arbitration demand, UHC has objected to the arbitrability of the claims in that forum. But despite UHC's objections, and the clear language of the SDA, DL Investment Holdings has refused to withdraw the arbitration. And shockingly, the American Arbitration Association ("AAA") has refused to determine whether the SDA bars the arbitration or renders the dispute not arbitrable.

42.    To the contrary, on November 15, 2022, the arbitration panel overseeing the improperly filed arbitration permitted DL Investment Holdings to amend its arbitration demand to seek rescission of the SDA in that forum. It further requested that the parties file dispositive motions, by January 16, 2023, addressing "standing to sue, arbitrability of various claims before the panel, the applicability and effect of the Stand Down Agreement on this arbitration and any other issue that could be dispositive of these proceedings." (Exhibit 6, 11/15/2022 Order.) But again, ***the SDA doesn't contain an arbitration clause***. Its meaning and enforceability are issues exclusively within this Court's purview.

43.     In addition to being a complete bar to DL Investment Holdings in-
itiating action against UHC, the SDA provides that the fees and costs of any
improperly filed action are to be borne by the breaching party, here DL Invest-
ment Holdings. (SDA ¶ 3.A.) UHC has therefore declined to pay half of the
AAA arbitration fees, although it has incurred substantial attorneys' fees.

44.     In response, on November 30, 2022, DL Investment Holdings filed
a "Motion to Prevent [UHC] from Seeking Any Affirmative Relief," which the
arbitration panel granted by ordering that UHC be prevented from pursuing
any counterclaims in that proceeding.

45.     On January 9, 2023, the arbitration panel denied DL Investment
Holdings' motion for entry of a scheduling order pending resolution of issues
surrounding the AAA's costs for the improper arbitration (suggesting that
UHC may be forced to pay costs for an arbitration it never agreed to). No dis-
covery or other substantive proceedings have taken place. The only deadlines
currently set in the putative arbitration are the dispositive motions deadlines
discussed above. But the arbitration panel has ruled that UHC may not file a
motion to dismiss the arbitration based on the SDA, although it has improperly
purported to assert jurisdiction over DL Investment Holdings' claim to rescind
the SDA.

46.     On January 16, 2023, DL Investment Holdings filed an early mo-
tion for summary judgment in the arbitration. The company not only seeks

rescission of the SDA from a panel without authority to make that determina-tion, but it seeks a no-evidence summary judgment on its underlying claims for damages—those that the SDA prohibits it from bringing.

## CAUSE OF ACTION FOR DAMAGES
## FOR BREACH OF CONTRACT

47.   UHC incorporates all preceding paragraphs as if fully stated herein.

48.   The SDA is a valid contract governed by Georgia law, which the parties executed to cease all legal proceedings (including arbitration) between them unless UHC were to first elect to re-initiate legal proceedings. (SDA ¶¶ 2.A, 2.B, 6.A.)

49.   The SDA is not subject to an arbitration agreement, meaning the parties have not agreed to have the interpretation and enforcement of the SDA decided by an arbitrator.

50.   The SDA states that DL Investment Holdings "shall not file ***any type*** of litigation against United concerning" the subject-matter of the With-drawn Arbitration "unless United initiates litigation (or provides notice of its intent to initiate litigation against a Durall Party [including DL Investment Holdings], in which case a Durall Party may assert claims or counterclaims against United." (SDA ¶ 2.A (emphasis added).)

51.     UHC has not initiated litigation—or provided notice of its intent to initiate litigation—against any Durall Party, including DL Investment Holdings. UHC has also not filed counterclaims in the current arbitration.

52.     DL Investment Holdings breached the SDA by filing claims in arbitration against UHC concerning the factual circumstances at issue (in fact, asserting claims identical to those at issue) in the Withdrawn Arbitration.

53.     UHC has a right to complain about the SDA being breached because it is a party to the SDA.

54.     The SDA provides that if DL Investment Holdings "initiate[s] litigation against United in breach of this Agreement," then the SDA is "an affirmative defense to such litigation, ***requiring dismissal*** of any claims asserted by the [Claimant] against [Respondents]." (SDA ¶ 3.A.) Moreover, the SDA states that "the Durall Parties that breached the Agreement ***shall be liable to United for all resulting costs and fees*** (including reasonable attorneys' fees) incurred by United as a result of such litigation." (SDA ¶ 3.B.)

55.     DL Investment Holdings' breach of the SDA caused UHC damages. UHC has been forced to engage attorneys, at great time and expense, to object to the arbitration filed in violation of the SDA and to initiate this action to enforce the SDA. UHC has incurred costs in the arbitration and this case.

56.     The Court should award UHC all costs and fees incurred in the improper arbitration and in this action, which have already accrued to over

$100,000 and will continue to rise as UHC is forced to spend money caused by DL Investment Holdings' breach.

## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTION AND TEMPORARY RESTRINING ORDER

57.   UHC incorporates all preceding paragraphs as if fully stated herein.

58.   UHC is likely to succeed on the merits of its breach of contract claim. The SDA unequivocally prohibits DL Investment Holdings from bringing any type of litigation unless UHC first initiates litigation against a Durall Party or provides notice of its intent to do so. UHC did not initiate any type of adversarial proceeding against a Durall Party. Therefore, DL Investment Holdings breached the SDA by initiating an arbitration against UHC.

59.   Unless the Court enters a preliminary and permanent injunction, UHC will suffer irreparable harm. There is no valid agreement between the parties to arbitrate the meaning and effect of the SDA or whether DL Investment Holdings may seek to unilaterally rescind the same. Further, because the parties have no valid agreement to arbitrate the claims brought by DL Investment Holdings in the present arbitration, AAA does not have jurisdiction over the dispute brought by DL Investment Holdings in violation of the SDA.

60.   DL Investment Holdings has not withdrawn the arbitration, and so it is forcing UHC to "expend time and resources arbitrating an issue that is

not arbitrable, and for which any award would not be enforceable." *Pictet Overseas Inc. v. Helvetia Tr.*, No. 13-81088-CIV, 2017 WL 10403345, at *4, n.3 (S.D. Fla. Apr. 14, 2017), *aff'd*, 905 F.3d 1183 (11th Cir. 2018) (citation and quotations omitted); *see also Dean Ritter Reynolds Inc. v. Pollack*, No. 96-6397-CIV, 1996 WL 1044969, at *4 (S.D. Fla. May 29, 1996) ("Where a party has a right to a judicial determination of arbitrability, it would be irreparable harm for arbitration to proceed on issues which are not subject to arbitration."). In fact, on January 17, 2023, DL Investment Holdings filed an early motion for summary judgment.

61.    If the arbitration is permitted to continue, it will be a massive undertaking. UHC will be forced to bring fraud counterclaims for tens of millions of dollars against DL Investment Holdings. At issue will not only be false representations about where lab services were performed (i.e., at Reliance not Chestatee) but also how Mr. Durall induced those services being ordered through offering kickbacks to various referring providers. A final hearing on the substantive issues would likely be several years from now, take at least several weeks, and follow discovery involving dozens of witnesses and hundreds of thousands of documents.[8]

---

[8]    The Criminal Case is a helpful litmus. That case has been pending for over two years and, ahead of trial, the government listed 51 witnesses and 328 exhibits. (*See* Criminal Case, Docs. 640, 645, 817.)

62.     Permitting DL Investment Holdings to proceed against UHC in arbitration on issues that are not subject to arbitration will cause greater injury to UHC than DL Investment Holdings. *See, e.g.*, *Dean Ritter Reynolds Inc.*, 1996 WL 1044969, at *4.

63.     Granting a preliminary injunction would not be averse to the public's interest "because the public has no interest in compelling arbitration of claims which are not subject to arbitration." *Id.* (citing *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).

64.     Moreover, if the present arbitration is left unchecked, it would have the practical effect of diminishing the Court's power to bring the litigation over the meaning of the SDA to a natural conclusion.

65.     Therefore, UHC requests that the Court enter a temporary restraining order and preliminary and permanent injunction enjoining DL Investment Holdings from pursuing its improper arbitration, except as provided for under the SDA—specifically, that DL Investment Holdings may only arbitrate or otherwise litigate the payment determinations at issue in the Withdrawn Arbitration if UHC were to first file any litigation or arbitration against a Durall Party, or if UHC were to provide DL Investment Holdings with notice of its intent to file litigation or arbitration against a Durall Party.

66.     Entry of a temporary restraining order and preliminary and permanent injunction in this case will preserve the status quo until the merits of

the dispute—the proper interpretation and effect of the SDA—can be fully and fairly adjudicated in the proper forum, this Court, and prevent a tribunal without authority to rule on the SDA from continuing to purportedly assert jurisdiction over the dispute.

Respectfully submitted January 17, 2023.

*/s/Benjamin D. Van Horn*

**SINTON, SCOTT,
MINOCK & KEREW**

Scott P. Kerew
Georgia Bar 416629
skerew@ssmklaw.com
Adam J. Sinton
Georgia Bar 235458
asinton@ssmklaw.com
Benjamin D. Van Horn
Georgia Bar 356482
bvanhorn@ssmklaw.com

3438 Peachtree Road NE, Ste 925
Atlanta, Georgia 30326
(470) 323-0003

*Counsel for Plaintiffs*

## VERIFICATION

I, Jonathan Wilson, declare as follows:

1.     My name is Jonathan Wilson. I am employed by UnitedHealthcare ("UHC") as Deputy General Counsel in the litigation division of UHC's legal department. The contents of this declaration are based on my personal knowledge, and I am of competent age and mind to testify to these facts.

2.     The allegations contained in this Verified Complaint, including the exhibits referenced therein, are true and accurate to the best of my knowledge and belief.

3.     Pursuant to 28 U.S.C. § 1746, I verify and declare under penalty of perjury that the foregoing is true and correct.

DATED: January 17, 2023.

*/s/ Jonathan Wilson*
Jonathan Wilson

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2023, the foregoing was electronically filed with the Court using CM/ECF. The complaint will be served on the above-named defendant.

*/s/Benjamin D. Van Horn*